IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMMA H., on behalf of S.H., a minor,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 4833 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court are Plaintiff's motion seeking remand of the Administrative Law Judge's ("ALJ") opinion denying her application for Supplemental Security Income ("SSI") on behalf of her niece, S.H., over whom she has had legal guardianship since March 2015 (D.E. 27, 200), and the Commissioner's motion to affirm the ALJ's decision (D.E. 33).

**I.      Procedural History**

Plaintiff applied for SSI in June 2018, when S.H. was 8 years old. On June 11, 2019, she and S.H. testified at a hearing, and on September 5, 2019, the ALJ denied Plaintiff's application, finding S.H. not disabled under the Social Security Act. (R. 38.)[4] This appeal followed.

---

[1] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On September 4, 2020, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 11.)

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

## II. The ALJ Opinion

The ALJ analyzed Plaintiff's claim using the Social Security Administration's ("SSA") three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a). At Step One, the ALJ determined that S.H. was not engaging in substantial gainful activity. (R. 23.) At Step Two, the ALJ determined that S.H. had the severe impairments of attention deficit hyperactivity disorder ("ADHD") and an adjustment/mood disorder. (*Id.*) At Step Three, the ALJ found that S.H. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of a listing. (R. 23-24.) To determine functional equivalence, the ALJ assessed Plaintiff's functioning under the six "domains" set forth in 20 C.F.R. § 416.926a(b)(1), determining that Plaintiff had less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, ability to care for herself, and health and physical well-being; she had no limitation in moving about and manipulating objects. (R. 30-38.) Because S.H. did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning, the ALJ concluded that S.H. was not disabled under the Act, 20 C.F.R. § 416.926a(d).[5] (R. 38.)

## III. Analysis

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ improperly analyzed S.H.'s functional equivalency and improperly discounted the opinions of S.H.'s second-grade teacher, Curtis Burrell. (D.E. 28: Pl.'s Mem. at 1.)

---

[5] A "marked limitation" "interferes seriously" with a claimant's ability to independently initiate, sustain, or complete activities, while an "extreme limitation" "interferes very seriously" with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i) and (3)(i).

### A. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal citations and quotations omitted).

### B. The ALJ's Determination that S.H. Had Less Than Marked Limitations Was Supported By Substantial Evidence.

Plaintiff argues that the ALJ's determination that S.H. has "less than marked limitations" in the domains of attending and completing tasks, interacting and relating with others, and caring for oneself was not supported by substantial evidence because the ALJ failed to consider evidence that contradicted his conclusions. (Pl.'s Mem. at 6.) The Court disagrees.

#### 1. Interacting and Relating with Others

In this domain, the ALJ must consider "a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others," including persons in authority, and the child's ability to comply with rules. SSR 09-5p, 2009 WL 396026, at *2. Plaintiff contends that the ALJ's determination that S.H. had less than marked limitations in this domain was not supported by substantial evidence because the ALJ "downplayed" S.H.'s impulsive behavior in group therapy "by noting that it was the result of missed medications 'on at least some occasions'" and that there were "'numerous instances of

3

cooperative behavior' and S.H.'s engagement." (Pl.'s Mem. at 7.) But Plaintiff's description shows that the ALJ did exactly what ALJs are supposed to do: "the ALJ found that the balance of the evidence reflected" less than marked limitations. *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023). "This explicit weighing is precisely within the purview of the ALJ—and it is not our place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Id*.

Moreover, the ALJ discussed evidence of S.H.'s behavior (both cooperative and impulsive) beyond Plaintiff's description.[6] For example, the ALJ recognized the evidence showed that S.H. "behaved impulsively at school and was suspended on several occasions for fighting with other students and hitting a teacher," but found that "this appear[ed] to be the result of missing medication on at least some occasions," according to Plaintiff's testimony, and "the record [also] reflects that the claimant was often likeable, cooperative, and generally engaged." (R. 34-35.) An ALJ "is not required to spell out in the record every piece of evidence that he considered and then accepted or rejected. . . . It is enough that the [ALJ] build a logical bridge between the evidence and his conclusions. This he did." *Crowell v. Kijakazi*, -- F.4th --, 2023 WL 4377086, at *3 (7th Cir. July 7, 2023) (internal citations omitted).

Plaintiff also contends that the ALJ omitted any consideration of the evidence that S.H. is disrespectful of adults in authority (Pl.'s Mem. at 7-8), and that the relevant evidence to which the ALJ did cite "was only cited by the ALJ in his general recitation of the evidence, not in connection with his analysis of this domain," such that Defendant "cannot . . . explain how it affected [the ALJ's] analysis." (D.E. 37: Pl.'s Reply at 2-3.) To the contrary, the ALJ considered abundant

---

[6] In her reply, Plaintiff contends that the ALJ's recognition that "[t]he record contains somewhat conflicting evidence regarding [S.H.'s] abilities in this area" (R. 35) was "disjunctive" and showed the ALJ "either misunderstood or mischaracterized the evidence upon which he relied." (Pl.'s Reply at 4-5.) But it is the ALJ's job to "resolve debatable evidentiary conflicts," *Reynolds*, 25 F.4th at 473, and the ALJ's recognition of conflict showed that he conducted an explicit weighing of the evidence before determining that "[o]n balance, for all of these reasons, . . . the evidence is consistent with less than marked limitations." (R. 35.)

4

evidence of Plaintiff's difficulty following the rules at school, both in the ALJ's general description of the evidence and in the ALJ's specific discussion of S.H.'s ability to interact and relate with others, including in S.H.'s own testimony. (*See* R. 26-28, 33 (citing instances where S.H. had trouble following the rules and was disrespectful to Plaintiff and teachers).) Furthermore, the ALJ's discussion of this evidence "elsewhere in the decision," *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021), rather than in the specific sections addressing S.H.'s functional equivalence under the six domains, does not constitute "cherry-picking" as Plaintiff contends (Pl.'s Reply at 4) because "[a]n ALJ need not rehash every detail each time he states conclusions on various subjects." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

Next, Plaintiff argues that "the ALJ failed to address the nature and extent of support S.H. has needed to behave as well as she does," such as taking medication, attending therapy, special education, and classroom and testing accommodations. (Pl.'s Mem. at 9.) But the ALJ did exactly that and concluded that these treatments and accommodations helped S.H. function at a level of less than marked limitations, reasoning that "while unfortunately [S.H.] has had rough start to life, she is smart. She is in counseling. And she is on medications and responds well to medications with no side effects." (R. 38.) Specifically, the ALJ considered S.H.'s reported behavior at school and home as well as her "stability" on medication and normal mental status examinations, and reasonably concluded that Plaintiff's "impairments were generally well controlled with medication." (R. 27-28, 30.) The ALJ also considered the notes and opinions of S.H.'s special education teacher, Rochelle Harris, who S.H. saw on a daily basis, and found them "generally consistent with the evidence" of the domains with which Plaintiff takes issue. (R. 30.)[7]

---

[7] Plaintiff repeats this argument with respect to each of the domain analyses with which she takes issue, and the Court rejects the argument in each of its recitations for the reasons set forth above.

**2. Attending and Completing Tasks**

The domain of attending and completing tasks considers a child's ability to "focus and maintain attention," and to "begin, carry through, and finish [] activities or tasks." 20 C.F.R. § 416.926a(h)(1). Plaintiff argues that the ALJ's reasoning for finding S.H. had less than marked limitations in this domain was "problematic." (Pl.'s Mem. at 10.) First, Plaintiff argues that the ALJ erred in finding that S.H. did not demonstrate problems in this area on a "consistent basis" because "most of S.H.'s group therapy sessions described her as both engaged or cooperative and impulsive and/or disruptive." (*Id*.) As explained above, this was not error, but rather showed that the ALJ explicitly weighed the evidence for and against Plaintiff's claims.

Second, Plaintiff contends that "the ALJ briefly acknowledged in passing that S.H. 'needed redirection at times,' [but] he failed to acknowledge or consider that she frequently needed repeated prompts or redirections to correct her behavior, if she listened at all. (*Id*. at 11.) But the ALJ did more than summarily conclude that S.H. needed occasional redirection, noting occasions where S.H. had some difficulty paying attention in group therapy and school but was receptive to redirection, and other times when S.H. was difficult to redirect. (R. 28, 33.) The ALJ also considered both times S.H. was actively engaged in group therapy and participated in activities and followed directions in class, and times when she was withdrawn or disruptive or had difficulty paying attention and needed redirection. (*Id*.) In other words, the ALJ explicitly weighed the evidence for and against Plaintiff's claims and supported his decision with substantial evidence.

Third, Plaintiff contends that the ALJ's reliance on S.H.'s behavior at the hearing (noting that S.H. "sat through the duration of the hearing . . . and did not demonstrate difficulty doing so," and that "related well during the hearing, was articulate, and was able to follow the conversation" (R. 30, 33)) was "misplaced" and not probative of S.H.'s functionality in this domain. (Pl.'s Mem.

6

at 11.) Contrary to Plaintiff's contention, "[i]t is a routine, common-sense practice for an ALJ to observe claimants. We see no reason to criticize the ALJ for his partial reliance on his own observations in his determination of disability." *Kaplarevic v. Saul*, 3 F.4th 940, 942-43 (7th Cir. 2021). The ALJ's observations at the hearing added to the substantial evidence in support of his decision.

### 3. Caring for Oneself

In assessing a child's functioning in the domain of caring for oneself, an ALJ must consider evidence of a child's ability to "maintain a healthy emotional and physical state," including the ability to cope with stress and changes in the child's environment. 20 C.F.R. § 416.926a(k). Plaintiff repeats her previous arguments, which the Court has already rejected, as to why the ALJ's analysis of this domain was inadequate, claiming that the ALJ focused on the fact that she has improved, but ignored her continued struggles with her behavior, including her anger, impulsivity and disruptiveness. (Pl.'s Mem. at 12.) As explained above, however, the ALJ did not ignore evidence of S.H.'s problematic behavior, but explicitly weighed it with contrary evidence of S.H.'s behavior. Plaintiff's "arguments amount to disagreements with the [ALJ's] conclusions, and we decline her invitation to reweigh the evidence." *Crowell*, 2023 WL 4377086, at *5.

### C. The ALJ's Decision To Discount Mr. Burrell's Opinion Was Supported By Substantial Evidence.

Plaintiff also argues that the ALJ improperly discounted Mr. Burrell's letter and Teacher Questionnaire, in which he opined, among other things, that S.H was "one of the most impulsive students [he] had experienced in [his] career;" that she had a "very serious problem" playing cooperatively with other children, including hitting and pushing other students; and that she had "serious problem[s]" focusing long enough to complete assigned tasks, working without distracting herself or others, making and keeping friends, seeking attention appropriately and

7

expressing anger appropriately. (Pl.'s Mem. at 13-14, citing R. 321-22, 350-51.) The ALJ reviewed details from Mr. Burrell's letter and questionnaire and found them unpersuasive, reasoning that S.H. "testified at the hearing that she did not like this teacher and the record suggests that her poor behavior was amplified in his class," as her special education teacher, who also saw S.H. each day, opined that S.H. had only slight or no problems in the same areas, except for one "obvious problem" in interacting with others and needing reminders to behave appropriately and control anger toward other students. (R. 29-30.) The ALJ concluded that "the balance of evidence [was] inconsistent" with Mr. Burrell's opinions because "[r]ather than consistently impulsive behavior, [S.H.'s] longitudinal medical history supports a conclusion that her impairments were generally well managed with medication despite a few outbursts." (R. 29-30, 37.)

Plaintiff argues that the ALJ's analysis of Mr. Burrell's opinions was flawed because it ignored evidence that contradicted the ALJ's characterization of the record and was consistent with Mr. Burrell's opinions, such as instances in which S.H. was impulsive and disruptive and evidence that showed S.H. fought with her peers and frequently required redirection. (Pl. Mem. at 14.) But the above description demonstrates, again, that the ALJ did not ignore this evidence. The ALJ did exactly as the regulation mandates and "consider[ed] all evidence in [S.H.'s] case record," 20 C.F.R. § 416.924a, including the opinions of the state agency mental health consultants finding less than marked limitations in attending and completing tasks and interacting and relating with others and no limitation in caring for herself, which Plaintiff curiously ignores. (R. 30, citing R. 91-93, 104-06.) These appear to be the only medical opinions in the record, and the ALJ explained that he found these opinions more persuasive than either of the teacher's opinions, although the ALJ found S.H. more limited in the area of caring for oneself. (R. 30, 37.) The ALJ's decision was

8

supported by substantial evidence. Plaintiff would like the Court to weigh the evidence differently than did the ALJ, but this we will not do.

## CONCLUSION

For these reasons, the Court denies Plaintiff's motion seeking remand of the ALJ's decision (D.E. 27) and grants the Commissioner's motion to affirm the decision (D.E. 33).

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: July 20, 2023**